STEPHENSON et al. v. LYON.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1897.)

No. 226.

PATENTS—INFRINGEMENT—MACHINES FOR STUFFING MATTRESSES.

The Stephenson patent, No. 376,399, for a machine for stuffing mattresses, consisting of a box in which the filling is molded, a plunger to press it forward into the tick, and a gate in front of the spout over which the tick is placed, and which is raised when the filling is pushed forward, construed, and *held* not infringed by a device in which the filling is not molded, but is reduced to appropriate dimensions by the pressure of feed rolls, which carry it forward and press it into the tick.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This was a bill in equity by Edwin N. Stephenson and others against George Lyon for alleged infringement of certain patents granted to complainants, and relating to machines for stuffing mattresses. The circuit court dismissed the bill, and complainants have appealed.

John H. Whipple, for appellants.

James H. Peirce and Geo. P. Fisher, for appellee.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

SHOWALTER, Circuit Judge. This was a bill for an injunction and an accounting. The appellants were complainants in the court of original jurisdiction. The cause of action is an alleged infringement of letters patent of the United States numbered 376,399, and letters patent numbered 399,093. The case was abandoned in the trial court as to the latter patent, and after a hearing on the merits as to the former the bill was dismissed for want of equity. Complainants thereupon brought the record to this court.

As stated in the specification of letters patent numbered 376,399, the invention of that monopoly "relates to a machine for stuffing mattresses." In this machine the compartment for receiving the stuff-

ing material is a rectangular box, set with its greater longitudinal section horizontal. This box is of the width of the mattress to be made.. The vertical extension of its longitudinal sides is somewhat greater than the thickness of such mattress. The bottom is firmly attached to the sides, and is a continuous horizontal plane. A gate, movable up and down in vertical side grooves, constitutes, when in its lower position, the front end of this box. Outwardly from this gate is a rectangular, horizontal extension, adapted in width and thickness to the form of the molded mattress stuffing, and called in the specification "the spout." Over this spout the mattress tick—being, for the purpose, open at one end—is drawn in numerous slight folds, and through this spout, when the gate is raised, the molded or formed stuffing material is thrust, carrying with it the enveloping tick; the latter, as the formed material enters, being gradually pulled off the spout, until completely filled. At the rear end of the compartment already mentioned, wherein the stuffing material is initially received, is an upright board, fixed transversely, and adapted, by means of a rack bar in the rear, to be moved over the stationary bottom of the box, and through the spout, in expelling the formed or molded stuffing material. This board constitutes, when in its rearmost position, the rear boundary of the compartment or receptacle for the stuffing material for a single mattress. This movable end piece is called in the specification "the plunger." The stationary portion of the compartment referred to, namely, the bottom and sides, is called in the specification "the box." At the rear end of the box, and extending transversely, between uprights, from one side to the other, is a horizontal bar, to which is hinged a cover, which is let down from its forward end when the material has been placed in the stuffing compartment. This hinged cover is thereupon further pressed down and held in its lowest position by means of a lever and crossbar. When the cover is so pressed down, the mattress filling is reduced to the thickness and width of the proposed mattress. The plunger is then moved forward until, by pressure from it and from the closed gate in front, the stuffing material (being meantime held between the sides, bottom, and cover) is reduced in length to that of the mattress. By this process the stuffing material is pressed, and in a manner molded or formed, so as to fit the tick. The gate in front, and covering the spout, is then raised; and by the further forward movement of the plunger the molded stuffing material is pushed so that it slides over the smooth bottom of the box, and through the spout, and into the tick. In this machine the box, the plunger,. the gate, and the cover constitute, in substantial measure, a former or mold; and by pressure in this mold or former, as described, the mattress filling is first compacted to the dimensions of the tick, and then thrust forward by the plunger into the tick.

The alleged infringing machine has the spout over which the tick is drawn, and through which the material passes into the tick. Immediately in the rear of the spout are two cylinders or rollers, so placed that the approach to the rear opening of the spout is between them. One of these cylinders is immediately above the other, the axis of one being parallel with that of the other. The distance be-

tween the outer surfaces of these rollers is the thickness of the proposed mattress, and also, of course, the thickness of the spout. Immediately behind and adjoining these two cylinders is the gate, and at the rear end of the box or compartment in which the stuffing material is first received is what is called in that mechanism a "follower." The sides of the box are upright, as in the appellants' machine. A cover is also, or may be, made use of in the appellee's machine; but this cover is constructed of slats at considerable distances apart, and the function of this cover is to aid in getting or holding the material ready for pressure, rather than to assist in forming or molding the same, as in the appellants' machine. The follower in the appellee's machine is attached to the bottom of the box; and the bottom, instead of being a stationary and smooth structure, as in the appellants' machine, is flexible,—being made of cloth, or some such material, and having a continuous movement over the undermost roller, like an endless chain. In the process of making a mattress in this machine, the material is first distributed in the compartment here described. The cover, if it be used at all, is then lowered to a horizontal position, but not for the purpose of compressing the material to the thickness of the mattress. The gate in front is then removed. The cylinders or feed rolls are then made to revolve, and the material is carried forward, and by their action is drawn between them, being compressed from point to point as it passes through. The follower in one of the machines introduced in evidence, when it reached the point where the cylinders were, passed on through to the mouth of the spout; thus driving the rear end of the mattress through the spout, and into the tick. This follower in the machine spoken of was made of two upright boards set parallel with each other, and connected together with crosspieces so that when the rear board was at the rear end of the spout the front board was at the front end. The evidence shows, however, that in making mattresses in series on the appellee's machine this follower consists, ordinarily, of a single board, and the rear end of one mattress, after it has passed through the feed rolls, is driven out of the spout by the front end of the next mattress as it follows through the feed rolls. It will be seen that in the appellee's machines the mattress is not molded, but the stuffing material is reduced in thickness to the appropriate dimensions of the mattress by the pressure of the feed rolls. The mattress is not first formed or molded to the dimensions of the tick, and then thrust into the tick, as in the appellants' machine.

There are seven claims in the appellants' patent. Each of these claims is on a combination, and in each one "the box" is a factor. As already stated, "the box" in the appellants' patent consists of the two longitudinal upright sides, and the smooth stationary bottom. This box, the plunger, the gate, and the cover, together, constitute a former, in which the stuffing material may be compressed to the dimensions of the tick. The upright sides, and the moving, adhering bottom, of what must be considered, for the purposes of the argument, the box, in the appellee's device, are not the same as the box in the appellants'. The bottom is not stationary, the compressed material does not slide over it, and it and the sides are not the in-

82 F.—41

strumentality for compressing the stuffing material. The function performed by the box in the appellants' machine is not performed by the corresponding parts in the appellee's. Again, the follower in the appellee's machine is not analogous to the plunger in the appellants' machine. The function of the plunger, aside from its aid in the molding or forming process, is to push the formed stuffing material between the cover, bottom, and sides, through the spout, and into the tick. Nothing of this kind takes place in the operation of the appellee's machine. The material is simply laid in the compartment constituted by the gate, follower, sides, and movable bottom, and is thence drawn, by force of the feed rolls and the movement of the bottom, through the feed rolls, and in that way the mattress is made. There is not in the appellee's device any factor or element which answers either to the box or to the plunger in the appellants' device. In each claim the box is a factor; in each, the plunger is a factor. Since the appellee's device shows no combination of elements which contains either of these features, there is no infringement. The decree dismissing the bill for want of equity is affirmed.